## CALDWELL v. UNITED STATES.
### No. 7384.

Circuit Court of Appeals, Third Circuit.
Oct. 3, 1940.

Theodore B. Benson and Charles E. Foster, Jr., both of Washington, D. C., and John G. Candor, of Williamsport, Pa., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Edward H. Hammond, Sp. Assts. to Atty. Gen., and Frederick V. Follmer, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for appellee.

Before JONES and GOODRICH, Circuit Judges, and GANEY, District Judge.

JONES, Circuit Judge.

The plaintiff sued in the District Court to recover income taxes paid by him for the year 1929 which he alleges were unlawfully assessed and collected. He now appeals from the judgment for the defendant entered by the court below pursuant to its findings from the facts stipulated by the parties. The question involved is whether the appellant may return on an installment sale basis the profits derived by him from the sale of certain stock.

Originally, the plaintiff had also contended that the gain accruing from his disposition of the stock represented the nontaxable result to him of a corporate reorganization. Following the entry of judgment below, the decision of the Supreme Court in Le Tulle v. Scofield, 308 U.S. 415, 60 S. Ct. 313, 84 L.Ed. 355, was rendered and the appellant has now abandoned any contention that his claim for refund is to be placed on that basis.

The findings below, which comport strictly with the stipulated facts, disclose the following situation so far as it is material to the pending question for decision. The plaintiff and three other individuals each owned one-fourth of the outstanding capital stock of the Winner-Franck Baking Company, a corporation, consisting of 200 shares. Early in 1929 the stockholders of the Baking Company, including the plaintiff, gave an option in writing for six months to one MacLachlan whereby the stockholders agreed to sell their 200 shares of Baking Company stock to MacLachlan for $385,000 of which $200,000 was to be paid in cash at the time the option was exercised and payment of the $185,000 balance to be secured by an interest bearing first mortgage of the assets of the Baking Company. Thereupon, MacLachlan organized the Winner-Franck Holding Company, a corporation, with an authorized capital of $300,000, represented by 12,000 shares of common stock of $25 par value each. This stock was offered for public subscription at par and $265,000 worth of the stock was thus subscribed. The 200 shares of Baking Company stock were then transferred by the plaintiff and the other stockholders to MacLachlan, save for the qualifying shares of one, each, transferred to three associates of MacLachlan. The plaintiff and the other survivor of the original stockholders resigned as officers and directors of the Baking Company and were succeeded in those offices by MacLachlan and his associates. The Holding Company then assumed MacLachlan's obligations under his contract for the purchase of the Baking Company stock and arranged to take title to the real estate and other assets of the Baking Company, for which the Holding Company was to give its bonds in the sum of $185,000, secured by its first mortgage of the Baking Company real estate, and $250,000 in cash, or partly in cash and partly in stock of the Holding Company at par.

Although MacLachlan's contract for the purchase of the Baking Company stock called for a consideration of $385,000, the sellers actually accepted $355,957.88 in cash and property as payment in full. The total consideration received by the plaintiff and his associates for their stock in the Baking Company was divided among them in such a way that the plaintiff received for his interest in the sale, $17,989.47 in cash, a share in an account due the Baking Company to the extent of $8,750, a share in a trust fund of the Baking Company in a bank to the extent of $5,754.59, stock in the Winner-Franck Holding Company of $5,750 par value, notes of the Winner-Franck Holding Company for $4,500 and $46,250 worth of first mortgage bonds of the Winner-Franck Holding Company. The total consideration thus received by the plaintiff for his 50 shares of Baking Company stock was $88,994.06 in cash and property, all of which he received in the year 1929. The stock in the Baking Company had cost the plaintiff $5,000, and he had expenses in connection with his sale of it amounting to not more than $6,343.83.

In his income tax return for the year 1929 the plaintiff reported his disposition of his 50 shares of Baking Company stock as "an installment sale", and showed a taxable gain therefrom for that year of $35,-

132. The Commissioner of Internal Revenue, denying the plaintiff's right to return the sale on an installment basis, assessed a tax on the basis of the total gain less the expenses of the sale and determined a deficiency in tax against the plaintiff accordingly for the taxable year. The plaintiff paid the additional assessment under protest, filed a claim for refund, and, after the Commissioner's disallowance thereof, entered his suit in the court below for the recovery of the additional tax.

The applicable Revenue Act, 1928, c. 852, 45 Stat. 791, 805, provides in Sec. 44(b), 26 U.S.C.A. Int.Rev.Acts, p. 364, that: "(b) Sales of Realty and Casual Sales of Personalty. In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 40 per centum of the selling price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

The basis and manner referred to in § 44(b), supra, for returning income in respect of an installment sale, is that prescribed by § 44(a), 26 U.S.C.A. Int.Rev. Acts, p. 364, which provides that, under approved regulations, a person who regularly sells property on the installment plan "may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price".

■ The wording of the applicable statutory provisions is so plain as not to require any construction other than that impelled by the clearly expressed intent. If the initial payment received by the seller exceeds forty per cent.[1] of the selling price, he is not authorized to report the sale on an installment basis. Stated otherwise, the receipt by the seller of an initial payment of not more than forty per cent. of the selling price is a condition precedent under the statute to the seller's right to report the sale on an installment basis. All payments received in the year of the sale go to constitute the initial payments. Gertrude H. Sweet v. Com'r., 8 B.T.A. 404; Cortland Specialty Co. v. Com'r, 22 B.T.A. 808, affirmed, 2 Cir., 60 F.2d 937, certiorari denied, 288 U.S. 599, 53 S.Ct. 316, 77 L.Ed. 975. The term "initial payments" as defined by the Act means "the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made". § 44(b), Revenue Act of 1928. The assignment of an evidence of indebtedness due by a third party is received in payment of the sale, pro tanto. See Georgia-Florida Land Co. v. Com'r, 16 B.T.A. 1253. Assignments of choses in action as part of the consideration of a sale are therefore to be included in calculating the "initial payments". The pertinent Treasury Regulation promulgated under the Revenue Act of 1928 (Treasury Regulations 74, Art. 351) properly carries forward the intent and requirements of § 44(b) of the Act.

■ In the instant case, the plaintiff sold his stock to MacLachlan. The stipulation of the parties so stated and the court below, accordingly, so found. The fact that the plaintiff received payment for the stock from another did not disturb the privity between him and MacLachlan, the purchaser. As the court below also correctly found [30 F.Supp. 308, 310], "All payments made to the Plaintiff for his stock in the Baking Company were in fact made by MacLachlan, or in his behalf, in discharge of MacLachlan's obligation to the Plaintiff". The only effect of the plaintiff's receipt from the Holding Company of the cash and property for his stock was to discharge MacLachlan's debt. Restatement of the Law, Contracts, § 421. As no part of the property received by the plaintiff for his stock was an obligation of MacLachlan, all that the plaintiff received in the year of the sale

---

[1] Since 1934, the prescribed percentage is thirty. Where the sale or other disposition of property was in a taxable year beginning prior to January 1, 1934, the limited percentage of the selling price required for an installment sale is that prescribed in the law applicable to such year. 53 Stat. 24, 26 U.S.C.A. Int.Rev. Code § 44(b).

in payment of the MacLachlan debt is to be included in determining the initial payments. So considered, the plaintiff received in the taxable year an initial payment on account of his stock sale in excess of forty per cent. of the selling price. He was therefore not entitled to return the sale on an installment sale basis and the Commissioner's assessment of the additional tax was warranted.

The judgment of the District Court is affirmed.